UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| NULANKEYUTMONEN | ) | |
| NKIHTAQMIKON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-05-168-B-W |
| | ) | |
| ROBERT K. IMPSON, | ) | |
| Acting Regional Director, Eastern | ) | |
| Region, Bureau of Indian Affairs, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO COMPEL**

The Court declines to compel disclosure of a predecisional intra-agency memorandum because the document is protected by the deliberative process privilege and because the benefit and need for disclosure do not outweigh the detriments.

**I.     STATEMENT OF FACTS**

On February 25, 2008, Nulankeyutmonen Nkihtaqmikon, a group of private citizens who are members of the Passamaquoddy tribe, together with several individual tribe members (Plaintiffs) moved to compel Robert K. Impson, Acting Regional Director for the Bureau of Indian Affairs (BIA), to disclose a memorandum written by the BIA Regional Realty Officer Randall Trickey on June 1, 2005 (Trickey memorandum).  *Mot. to Compel* (Docket # 87) (*Pls.' Mot.*).  The BIA objected.  *Defs.' Combined Resp. in Opp'n to Pls.' Mot. for Submission of Extra R. Evidence and Designation of Expert Witness and Pls.' Mot. to Compel* (Docket # 103) (*Defs.' Resp.*).  On July 1, 2008, after oral argument, the BIA provided the Court with a copy of the Trickey memorandum for *in camera* review.

## II.    DISCUSSION

### A.    Deliberative Process Privilege

The Plaintiffs first learned of the Trickey Memorandum when BIA listed it in a Privilege Log dated December 12, 2007.[1] *Pls.' Mot.* at 3.  BIA asserts that the Trickey memorandum is protected from disclosure under the deliberative process privilege because it is predecisional and deliberative. *Defs.' Resp.* at 11.  As its name suggests, the deliberative process privilege is designed to protect the agency's deliberative material in order to encourage "frank and open discussions of ideas" to enhance the quality of its deliberative processes and ultimately of its decisionmaking. *Nat'l Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  Indeed, the Supreme Court has written that it "would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny." *EPA v. Mink*, 410 U.S. 73, 87 (1972).

To qualify for the deliberative process privilege, however, a document "must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'" *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (quoting *Nat'l Wildlife Fed'n*, 861 F.2d at

---

[1] The Plaintiffs elected to move to compel disclosure of the document in the context of this action, not their companion Freedom of Information Act (FOIA) case. *See Nulankeyutmonen Nkihtaqmikon v. BIA*, 05-cv-188-B-W (D. Me.).  In fact, Plaintiffs assert that the "BIA failed to disclose the existence of the Trickey Memorandum at any point during the FOIA litigation." *Pls.' Mot.* at 3.

Though most cases discuss the deliberative process privilege in the context of a FOIA exception, the privilege may be applied in other circumstances as well.  *See, e.g.*, *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995); 5 U.S.C. § 552(b)(5) (providing a FOIA exception for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency").  Where the government asserts a privilege based upon the deliberative process, the same policies that underlie FOIA requests come into play.  Specifically, "FOIA was intended to expose the operations of federal agencies 'to the light of public scrutiny.' . . .  The nine FOIA exceptions are to be construed narrowly, with any doubts resolved in favor of disclosure." *Carpenter v. United States Dep't of Justice*, 470 F.3d 434, 437-38 (1st Cir. 2006) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976)).  Here, the policy for compelling release of the Trickey Memorandum is closely related to this more generalized FOIA policy, even though the Motion to Compel is not made in the FOIA context.

1117). To show that the document is predecisional, the agency must "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." *Providence Journal Co. v. United States Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992) (internal citations and quotation marks omitted). "A predecisional document will qualify as 'deliberative' provided it (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Id.* at 559 (internal quotation marks omitted). Finally, "[a]n agency may withhold non-exempt information only if it is so interspersed with exempt material that separation by the agency, and policing of this by the courts would impose an inordinate burden." *Church of Scientology Int'l v. United States Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994) (internal quotation marks omitted).

### B.    Application of the *Providence Journal* Elements

The crux of the parties' debate regarding application of the deliberative process privilege is whether the memorandum was predecisional. The Court reviews here the three *Providence Journal* requirements for a predecisional agency opinion.[2]

### 1.    The First Factor:  Pinpointing the Decision

The BIA pinpointed the agency decision to which the June 1, 2005 Trickey memorandum correlates:  the June 1, 2005 final agency decision to approve the ground lease between the

---

[2] The parties have not directly argued about whether the memorandum meets the second *Providence Journal* requirement that the document be deliberative. Having reviewed the Trickey memorandum, however, the Court confirms it was deliberative: First, it was part of a consultative process to determine whether the BIA should approve the lease and the Regional Realty Officer's opinions were not "peripheral or gratuitous"; second, the memorandum represents Mr. Trickey's opinion, and not agency policy; and, third, its release would "inaccurately reflect or prematurely disclose the views of the agency" prior to the lease's approval. *Providence Journal*, 981 F.2d at 559-60.

Passamaquoddy Tribe and Quoddy Bay LLC.  The Court's *in camera* review of the Trickey memorandum confirms that the memorandum correlates to the June 1, 2005 decision and the Court concludes that the BIA satisfied the first *Providence Journal* criterion.

### 2..    The Second Factor:  Prepared for the Purpose of Assisting the Agency Official Charged With Making the Agency Decision

Plaintiffs point out that the Trickey memorandum is addressed "To: The Files."  *Pls.' Mot.* at 5.  They claim that if Mr. Trickey prepared the memorandum to advise Mr. Keel, the memorandum would have been addressed to him or to the group of BIA officials charged with making the decision.  *Id.*  Instead, Plaintiffs contend Mr. Trickey prepared the memorandum only to summarize his views about an agency decision that had already been made.  *Id.*

In response, the BIA submitted the declaration of Franklin Keel, the Regional Director of the Eastern Region of the BIA and the official who approved the contested ground lease.  *Decl. of Franklin Keel Asserting the Deliberative Process Privilege* (Docket # 103-2) (*Defs.' Ex. 1*).  Mr. Keel explains that Mr. Trickey was the BIA Realty Officer and his memorandum "memorialize[d] his analysis of the lease and . . . discuss[ed] the various issues pertaining to certain controversial provisions of the lease."  *Id.* ¶ 3.  Mr. Keel states that the Trickey memorandum "was prepared in advance of any final agency decision on whether to approve the lease, and it was available for BIA decisionmakers to review in connection with their consideration of the lease."  *Id.*

The Court agrees with the BIA that the deliberative process privilege does not mandate that a document must take a particular form.  Although Mr. Trickey captioned the memorandum "To: The Files," the Court is convinced in performing an *in camera* review of the document that it was written to advise the decisionmakers.  Mr. Keel's declaration confirms what the document

itself evidences.  The Court concludes that the BIA satisfied the second *Providence Journal* criterion.

### 3.    The Third Factor:  Preceding in Temporal Sequence

Given the coincidence that the Trickey memorandum was dated June 1, 2005, the very day of the BIA decision, Plaintiffs remain suspicious.  They contend the memorandum must have summarized Mr. Trickey's views about a decision that had already been made or, alternatively, the BIA did not have enough time before it made the decision to rely upon the memorandum during its decisionmaking process.  *Pls.' Mot.* at 5.  In effect, Plaintiffs challenge the last *Providence Journal* criterion – whether "the document precedes, in temporal sequence, the decision to which it relates."  *Providence Journal*, 981 F.2d at 557 (internal quotation marks omitted).

The BIA counters again with the Keel declaration.  *Defs.' Ex. 1*.  Mr. Keel declared under oath that the memorandum was prepared in advance of the decision and was available to the decisionmakers.  *Id.* ¶ 3.  In the absence of any evidence to the contrary and in view of the language in the Trickey memorandum, the Court accepts Mr. Keel's sworn representations.  Plaintiffs' suspicions do not rise to the level of evidence nor do they justify discounting the sworn declaration of the agency decisionmaker.

Finally, Plaintiffs assert, without authority, that "BIA would not have had time to rely upon this Memorandum during its decision-making process."  *Pls.' Mot.* at 5.  The Court notes that the memorandum is a two and one-half page document that could be reviewed in a matter of minutes.  The Court is unaware of any authority holding that to be predecisional a document must be prepared any particular amount of time before the decision itself.  Rather, as the Supreme Court has explained, the test is whether the document looks forward toward a decision

to be made or looks backward explaining a decision that has already been made. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.19 (1975). The Court concludes that the BIA satisfied the third *Providence Journal* criterion.

### C.    The Qualified Privilege:  Weighing Competing Interests

The Court's conclusion that the document satisfies the *Providence Journal* criteria for protection under the deliberative process privilege does not end its analysis. The privilege "is a qualified one, and is not absolute." *Texaco P.R.*, 60 F.3d at 885. (internal citation and quotation marks omitted). The court "should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." *Id.* If the documents "may shed light on alleged government malfeasance, the privilege is routinely denied." *Id.* (internal citation omitted). The burden of proving this qualification falls on the Plaintiffs. *Maine v. Norton*, 208 F. Supp. 2d 63, 67 (D. Me. 2002).

Plaintiffs suspect the Trickey memorandum contains information vital to its claim that the BIA violated federal regulation by failing to ensure that the tribal land was leased at a fair rental value and that a fair market value appraisal was obtained before lease approval. *Second Am. Compl. for Declaratory and Injunctive Relief* at ¶¶ 120-21 (Docket # 39); *Pls.' Mot.* at 6. They contend that "[f]rom the administrative record, it appears BIA decided to forego a fair market appraisal based on the opinion of an energy attorney hired by the Passamaquoddy Tribe." *Pls.' Mot.* at 7. Plaintiffs are referring to a letter dated May 31, 2005, from William A. Mogel, a Washington D.C. attorney. Administrative Record 10 (AR). They attack the BIA's reliance on the Mogel letter, arguing that "his clientele is the energy industry, and he is actively working on their behalf to promote the development of LNG projects," that Mr. Mogel admitted he has "no

expertise in the appraisal of real estate," and that he did not "research[] any other LNG leases" or "develop a valuation of the Split Rock site from real estate transactions in the surrounding area." *Pls.' Mot.* at 7.  The BIA replies that the administrative record contains not merely the Mogel opinion, but also the Solicitor's Opinion dated May 26, 2005, which provides Plaintiffs with "an understanding of the process and information utilized to determine fair annual rental."  *Defs.' Resp.* at 13; AR 7.  Citing a declaration from Franklin Keel, the BIA argues that the release of the Trickey memorandum would have a "chilling effect on the decision-making process."  *Defs.' Resp.* at 13 (citing *Defs.' Ex. 1* at ¶ 4).

The First Circuit has described this policy battle.  *Texaco P.R.*, 60 F.3d at 885.  As the Supreme Court has written, the deliberative process privilege rests "on the policy of protecting the decision making processes of government agencies."  *Sears*, 421 U.S. at 150 (internal quotation omitted).  The concern is that "the frank discussion of legal or policy matters in writing might be inhibited if the discussion were made public; and that the decisions and policies formulated would be the poorer as a result."  *Id.*  (internal quotation omitted).  *Sears* went on to say that "there are enough incentives as it is for playing it safe and listing with the wind, and . . . human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process."  *Id.* at 150-51 (internal citation and quotation marks omitted).

On balance, the Court declines to require disclosure of the Trickey memorandum.  In view of the BIA's disclosure of the Mogel letter (AR 10) and especially the Solicitor opinion (AR 7), the contents of the Trickey memorandum itself, and the need for unvarnished intra-agency advice before a decision is reached, Plaintiffs have failed to demonstrate that any "particularized need" for this additional predecisional document "outweighs the government's

interest in protecting the decisionmaking process."[3]  *Maine*, 208 F. Supp. 2d at 67; *see Sears*, 421 U.S. at 150 (regarding the government's interest); *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (describing the test).[4]

## III.   CONCLUSION

The Court DENIES the Plaintiff's Motion to Compel (Docket # 87).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE


Dated this 10th day of July, 2008

---

[3] Plaintiffs suggested that the BIA's conduct of the FOIA litigation, especially its volte-face between district and appellate courts about whether its lease approval constituted a final agency action, justifies the disclosure of the Trickey memorandum as a sanction.  The better place to address the BIA's changing positions in the FOIA litigation is the FOIA litigation itself.

[4] Plaintiffs argue that "[w]hen the 'decision-making process itself is the subject of the litigation,' it is 'inappropriate to allow the deliberative process privilege to preclude discovery of relevant information.'"  *Pls.' Mot.* at 8 (quoting *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003).  This case is inapposite.  First, *Williams* is in the context of a civil rights case against a police department, in which fundamental constitutional rights were at issue.  *Williams*, 213 F.R.D. at 99; *see also Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) (regarding transit authority's drug testing process).  Second, cases in which the "decision-making process itself is the subject of the litigation" are cases where, for example, the plaintiff claims retaliation through a performance evaluation, *Grossman v. Schwartz*, 125 F.R.D. 376, 384 (S.D.N.Y. 1989), or where "the party's cause of action is directed at the government's intent in rendering its policy decision." *Children First Found., Inc. v. Martinez*, No. 1:04-CV-0927, 2007 U.S. Dist. LEXIS 90723, at *26-27 (N.D.N.Y. Aug. 3, 2007).  As one district court has noted, "every suit challenging an agency's decision could be construed as a challenge to its decision-making process." *United Med. Prods. v. McClellan*, No. 2:03-CV-00525, 2004 WL 988877, at *8 (D. Utah Mar. 31, 2007).  Similarly, Plaintiffs' motion concerns their claim that the BIA violated the law by failing to undertake a fair market appraisal; the determination of whether the BIA met its legal obligations does not implicate the "decision-making process itself." *Williams*, 213 F.R.D. at 102.