UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| NULANKEYUTMONEN | ) | |
| NKIHTAQMIKON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-05-168-B-W |
| | ) | |
| ROBERT K. IMPSON, | ) | |
| Acting Regional Director, Eastern | ) | |
| Region, Bureau of Indian Affairs, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANT'S RENEWED MOTION TO DISMISS
ON EXHAUSTION GROUNDS**

Directed by the First Circuit to determine whether exceptions to the administrative exhaustion requirement justify judicial retention of this case, the Court concludes that none of the exceptions applies. Despite the Bureau of Indian Affairs' inept defense of this action, characterized by contradiction and delay, the benefit of belated administrative review exceeds the need for immediate judicial resolution.

**I.      STATEMENT OF FACTS**

**A.      Procedural History**

On January 11, 2008, Defendants submitted what they term a Renewed Motion to Dismiss, contending that the Plaintiffs did not meet the administrative exhaustion requirement on their claims.[1] *Defs.' Renewed Mot. to Dismiss and Incorporated Mem. in Supp. of Defs.' Renewed Mot.* (Docket # 78) (*Defs.' Mot.*). Plaintiffs responded on February 4, 2008, arguing

---

[1] The term "renewed" implies that the BIA re-filed its earlier arguments. It has not. This is not a renewed motion to dismiss; it is a second motion to dismiss on new grounds.

that exhaustion under the APA does not apply in this case, and alternatively, that one of the exceptions should be employed. *Pls.' Opp'n to Mot. to Dismiss* (Docket # 80) (*Pls.' Opp'n*). Defendants replied on February 15, 2008. *Defs.' Reply in Supp. of Defs.' Renewed Mot. to Dismiss* (Docket # 85) (*Defs.' Reply*). The Court held oral argument on July 1, 2008.

**B.    The Facts Underlying the Exhaustion Issue**

The First Circuit and this Court previously described in detail the facts in this law suit. *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18 (1st Cir. 2007) (*NN*); *Nulankeyutmonen Nkihtaqmikon v. Impson*, 462 F. Supp. 2d 86 (D. Me. 2006) (*NNI*). For the purposes of the Court's exhaustion determination, the salient facts are:  In May, 2006, the Pleasant Point Passamaquoddy Reservation and Quoddy Bay, LLC formalized a ground lease agreement to allow Quoddy Bay to develop a LNG terminal on a three quarter acre portion of tribally owned land known as Split Rock, pending federal approval of the project. The Tribal Council approved the lease on May 19, 2005, and pursuant to the Indian Long-Term Leasing Act of 1955 ("Leasing Act"), 25 U.S.C. § 415, sent the lease to the BIA for review. Franklin Keel, Regional Director of the Eastern Region of the BIA, approved the lease on June 1, 2005.

A group of private citizens, who are residents of the Pleasant Point Passamaquoddy Reservation in Maine, oppose the construction of the terminal and banded together under the name Nulankeyutmonen Nkihtaqmikon (NN).[2]  Together with several individual plaintiffs, they did not appeal the BIA's approval of the lease to the Interior Board of Indian Appeals (IBIA); rather, they filed a lawsuit in this Court, challenging the BIA's approval of the lease on multiple grounds: failure to comply with the procedural requirements of the National Environmental

---

[2] "Nulankeyutmonen Nkihtaqmikon" translates into English from the Passamaquoddy language as "We Protect the Homeland." *NN*, 503 F.3d at 23 n.1.

Policy Act (NEPA), 43 U.S.C. § 4321, *et seq.*, the National Historic Preservation Act (NHPA), 16 U.S.C. § 470, *et seq.*, the Leasing Act, and the Endangered Species Act (ESA), 16 U.S.C. § 1531, *et seq.*

Instead of answering the Complaint, the BIA moved to dismiss on January 24, 2006. *Defs.' Mot. to Dismiss* (Docket # 12). On November 16, 2006, after extensive briefing and an oral argument, the Court granted the BIA's motion to dismiss, concluding that the Plaintiffs lacked standing and that their claims were not ripe for adjudication. *NNI*, 462 F. Supp. 2d at 112 (Docket # 49). The Court did not address exhaustion, because it was not raised.

On December 8, 2006, the Plaintiffs appealed. *Notice of Appeal* (Docket # 51). The first reference to exhaustion of administrative remedies appeared in the BIA's responsive brief before the First Circuit, which was filed on April 12, 2007. The First Circuit issued its opinion on September 14, 2007, and its mandate on November 8, 2007. *NN*, 503 F.3d at 18 (Docket # 56); *J.* (Docket # 65). The First Circuit directed the Court to "consider whether Plaintiffs merit an exception to the exhaustion requirement." *Id.* at 34. On December 7, 2007, the Defendants filed an answer to the second amended complaint, asserting as its sole affirmative defense that the Plaintiffs had failed to exhaust administrative remedies. *Defs.' Answer to Pls.' Second Am. Compl.* (Docket # 70).

## II.   STANDARD OF REVIEW

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In ruling on a motion to dismiss, a court must 'accept all well-pleaded facts of the complaint as true and draw all reasonable inferences in favor of the plaintiff.'" *Moss v. Camp Pemigewassett, Inc.,* 312 F.3d 503, 506 (1st Cir. 2002) (quoting *Aybar v. Crispin-Reyes,* 118 F.3d 10, 13 (1st Cir. 1997)).

3

A defendant is entitled to dismissal only if it "'appears to a certainty that the plaintiff would be unable to recover under any set of facts.'" *State St. Bank & Trust Co. v. Denman Tire Corp.,* 240 F.3d 83, 87 (1st Cir. 2001) (quoting *Roma Constr. Co. v. aRusso,* 96 F.3d 566, 569 (1st Cir. 1996)); *see also Nethersole v. Bulger,* 287 F.3d 15, 18 (1st Cir.2002) (accepting, in the context of a 12(b)(6) review, "all factual allegations in the complaint and drawing all reasonable inferences in [the plaintiff's] favor"). However, the Court "need not credit a complaint's bald assertions or legal conclusions." *Glassman v. Computervision Corp.,* 90 F.3d 617, 628 (1st Cir.1996) (citation and internal quotation marks omitted).

## III.   DISCUSSION

### A.   Statutory and Regulatory Background

Under the Administrative Procedure Act (APA), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[3]  5 U.S.C. § 702.  However, judicial review is not available if the aggrieved party has not exhausted his administrative remedies.  5 U.S.C. § 704.  This requirement permits "the agency an opportunity to apply its expertise and correct its mistakes, it avoids disrupting the agency's processes, and it relieves the courts from having to engage in 'piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary.'"  *Rhode Island Dept. of Envtl. Mgmt. v. United States*, 304 F.3d 31, 40 (1st Cir. 2002) (quoting *FTC v. Standard Oil Co.,* 449 U.S. 232, 242 (1980)).

### B.   The First Circuit Decision

_____

[3] All of the Plaintiffs' claims are governed by the APA, with the exception of the ESA claims.

4

In *NN*, the First Circuit addressed the BIA's argument that the Court lacked subject matter jurisdiction because the Plaintiffs failed to exhaust their administrative remedies.  Citing 25 C.F.R. §§ 2.4(e) and 2.6, the First Circuit noted that "BIA regulations require an appeal to the [IBIA] before lease approve is 'final,' and therefore subject to judicial review under the APA." *NN*, 503 F.3d at 33.  The First Circuit ruled that although this exhaustion requirement is not jurisdictional, it is mandatory, and at the same time, "subject to certain exceptions." *Id.*  The First Circuit directed this Court to "consider whether Plaintiffs merit an exception to the exhaustion requirement." *Id.* at 34.

In its discussion of the exceptions to the exhaustion requirement, the First Circuit cited two lines of cases: *White Mountain Apache Tribe* and *Frederique-Alexandre*. *Id.*   *White Mountain Apache Tribe* addresses "exceptional circumstances," such as futility, "where exhaustion may not be required." *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988).   *Frederique-Alexandre* describes common law exceptions to the exhaustion requirement, such as "waiver, estoppel, and equitable tolling." *Frederique-Alexandre v. Dep't of Natural and Envtl. Res.*, 478 F.3d 433, 440 (1st Cir. 2007).   The First Circuit noted that *Frederique-Alexandre* cited *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).  Finally, for guidance on remand, the First Circuit cited *Casanova*, which remanded a case to the district court "for development of the record with regard to the issue of exhaustion of administrative remedies." *Casanova v. Dubois* 289 F.3d 142, 147 (1st Cir. 2002).  In accordance with the First Circuit's directive, the Court considers first the need to develop a further record to support the parties' respective positions and then addresses both types of exhaustion exceptions – *White Mountain* and *Frederique-Alexandre*.

### C.    The Exhaustion Requirement and Law of the Case

Before reaching those issues, however, the Court will address what remains for it to decide on the exhaustion issue.  On remand, the Plaintiffs engaged in a futile attempt to convince the Court that the First Circuit erred when it issued *NN* and that this Court is free to decide under Supreme Court authority that exhaustion does not apply.  To set the stage, the Plaintiffs point out that under, *Darby*, where the APA applies, "an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review."[4]  *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (emphasis in original).

They focus on the second *Darby* requirement – that the administrative action must be made inoperative pending the administrative review.  Pointing specifically to 25 C.F.R. § 2.6(a), the BIA regulation that requires exhaustion of administrative remedies, the Plaintiffs say the BIA regulation is defective in that it "fails to satisfy the second prerequisite for exhaustion because it does not ensure that a challenged agency action will be 'inoperative while administrative appeal is pending.'" *Pls.' Opp'n* at 7 (citing 5 U.S.C. § 704).  In effect, the Plaintiffs urge the Court to hold that under *Darby*, the First Circuit was wrong when it concluded that the BIA regulations mandate exhaustion under the APA.

As advocates, the Plaintiffs have the freedom of argument; as an inferior court, this Court has the obligation of obedience.  The Court concludes that the First Circuit has already addressed in *Darby* when it wrote that "BIA regulations require an appeal to the [IBIA] before lease approval is 'final,' and therefore subject to judicial review." *NN*, 503 F.3d at 33.  The First Circuit's statement was not mere dicta.  Exhaustion of remedies was clearly joined as an issue on

---

[4] The Plaintiffs first argue that that there is no exhaustion requirement under NEPA, the NHPA, and the Leasing Act and for those statutes, the exhaustion provisions of § 704 of the APA control.  *Pls.' Opp'n* at 6.  This much of their argument is consistent with the First Circuit decision, which stated that "BIA regulations require an appeal to the [IBIA] before lease approval is 'final,' and therefore subject to judicial review under the APA." *NN*, 503 F.3d at 33.

appeal. *NN*, 503 F.3d at 33-34.   Although the First Circuit agreed with the Plaintiffs that exhaustion is not a jurisdictional bar, the court went on to state that "it is mandatory," and on remand, the First Circuit ordered this Court to consider not whether the exhaustion requirement applies, but "whether Plaintiffs merit an exception to the exhaustion requirement."  *Id.* at 33.

If the Plaintiffs wished to argue that the BIA regulation is defective under *Darby* and provides a basis for skipping the exhaustion requirement, they could and should have raised the issue on appeal.  Whether the BIA regulation fails under *Darby* is purely a question of law and if raised, one the First Circuit could have readily resolved without remanding to this Court to further develop a record.  Instead, the First Circuit, in plain language, concluded that the exhaustion requirement for this case was "mandatory."  *Id.*  The Plaintiffs cannot be heard to argue an issue on remand that they lost before the circuit court nor can they make new arguments here that they could have made there.

A trial court is not an appellate court of second resort, where disgruntled parties are free on remand to try out or refloat arguments on the matters before the appellate court that the higher court never considered or expressly rejected.  In memorable and oft-quoted language, the First Circuit stated in a different context that "[p]arties must take before the magistrate, not only their best shot but all their shots."  *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (quotation marks omitted).  The same principle applies all the more so when the parties appear before the circuit court itself.

The same rule also applies to the Plaintiffs' ESA argument.  They now assert that, unlike the other causes of action, the ESA claim is not being brought pursuant to the APA and instead is grounded on 16 U.S.C. § 1540(g), a specific statutory provision in the ESA that they say authorizes judicial review of citizen suits without administrative appeal.  *Id.* at 18.  But, the First

Circuit decision did not mention an ESA exception to the exhaustion requirement; it stated without restriction that exhaustion "is mandatory."[5]  *NN*, 503 F.3d at 33.  If the Plaintiffs had good reason to believe that the exhaustion requirement did not apply to their ESA claim, they had an obligation to raise that issue before the First Circuit, so that the appellate court could duly address and resolve it.  Instead, the First Circuit remanded the entire case, including the ESA claim, to this Court to determine whether any exceptions are warranted to the exhaustion requirement.

The First Circuit decision is the law of the case and this Court is obligated to follow its mandate.  "[W]hen a case is decided by an appellate court and remanded . . . any questions that were before the appellate court and disposed of by its decree become the law of the case and bind the district court on remand."  *United States v. Rivera-Martinez*, 931 F.2d 148, 150 (1st Cir. 1991) (quoting *United States v. Belculfine*, 527 F.2d 941, 943 (1st Cir. 1975)).

**D.    The Record on Remand**

On November 8, 2007, the Court received the First Circuit Mandate in this case; on December 13, 2007, the BIA gave notice of its filing of the administrative record.  *Notice of Filing Administrative R.* (Docket # 72).  Apart from the filing of the administrative record, neither party sought to develop a record on the exhaustion question.  In accordance with the First Circuit mandate and *Casanova*, the Court inquired at oral argument whether the parties wished to present further evidence to supplement the record on this issue.  *Casanova*, 289 F.3d at 147 (stating that on remand the court should "elicit[] from the parties whatever information [the court] deems necessary to making this determination . . .").  The parties affirmed they were

---

[5] The First Circuit panel was aware that the Plaintiffs were pursuing an ESA cause of action.  *See NN*, 503 F.3d at 28 ("Plaintiffs have therefore alleged a sufficient injury in fact to establish standing to pursue their procedural claims under NEPA, NHPA, and ESA.").

satisfied with the record and thus waived the right to further develop the evidence in support of their positions on exhaustion.

In their response to the BIA's motion to dismiss, the Plaintiffs attached copies of numerous documents. As this is a motion to dismiss, there is some question whether the Court should consider these documents under *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) and whether they have been properly placed before the Court. *Clark v. Inhabitants of Palermo*, Civ. No. 07-134-B-W, 2007 U.S. Dist. LEXIS 95152, at *6-8 (D. Me. Dec. 28, 2007). Nevertheless, the Court will consider the Plaintiffs' attachments on one or more of a number of bases: the BIA has not objected; the parties do not contest the authenticity of the documents; some exhibits are in the BIA administrative record; most fit within the public record exception; and, many are sufficiently referred to in the Complaint and are central to the Plaintiffs' claim. *Watterson*, 987 F.2d at 3-4; *Greenier v. Pace, Local No. 1188*, 201 F. Supp. 2d 172, 177 (D. Me. 2002).

### E.     *White Mountain* **Exceptional Circumstances**

The Court turns to the *White Mountain*-type exception to the exhaustion requirement.

#### 1.     *White Mountain*

In *White Mountain*, a 1988 Ninth Circuit case, the White Mountain Apache Tribe attempted to litigate claims against the United States Department of the Interior, alleging the Department performed poorly as trustee of the natural resources on its reservation. *White Mountain*, 840 F.2d at 676. The district court dismissed the Tribe's claims for failure to exhaust administrative remedies. *Id.* The Tribe conceded that it had not pursued any administrative appeals, however, the Tribe attempted to justify its failure to do so, claiming the agency was proceeding "fraudulently" and it could obtain no relief within the agency. *Id.* at 676-77. After noting that BIA regulations require the exhaustion of administrative remedies, the Ninth Circuit

said that there are "exceptional circumstances where exhaustion may not be required."  *Id.* at 677.  *White Mountain* listed two examples:  (1) where "administrative review would be futile by virtue of a preannounced decision by the final administrative decisionmaker," or (2) where there is "objective and undisputed evidence of administrative bias which would render pursuit of an administrative remedy futile."  *Id.* at 677-78.   Having announced these exceptions, *White Mountain* concluded that the Tribe's "bald assertion" that the agency is acting fraudulently was insufficient to allow the exception and to permit the Tribe to litigate the issue would "be in flat contravention of the principles of exhaustion of administrative remedies."  *Id.* at 677.

## 2.   *White Mountain* **and First Circuit Authority**

The First Circuit has analyzed *White Mountain*-type exceptions in several cases that both pre- and post-date *White Mountain*.  *See Swirsky v. Nat'l Assoc. of Sec. Dealers*, 124 F.3d 59, 63 (1st Cir. 1997); *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 79 (1st Cir. 1997); *Gilbert v. City of Cambridge*, 932 F.2d 51, 60-61 (1st Cir. 1991); *Ezratty v. Com. of Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981).   The First Circuit has generally reaffirmed that before granting an exception to the exhaustion requirement, the court must recognize exhaustion's important purposes:  "[i]nsisting on exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether."  *Portela-Gonzalez*, 109 F.3d at 79.   Thus, the purposes of exhaustion include the "interests of accuracy, efficiency, agency autonomy and judicial economy."  *Ezratty*, 648 F.2d at 774.

"Although exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress, courts have more latitude in dealing with exhaustion questions when

Congress has remained silent." *Portela-Gonzalez*, 109 F.3d at 77 (quotation marks omitted). To

decide whether to exercise this latitude, the court must consider:

> "[T]hree broad sets of circumstances in which the interests of the individual
> weigh heavily against requiring administrative exhaustion." These exceptions
> are when the requirement occasions undue prejudice to subsequent assertion of a
> court action; where the agency is not empowered to grant effective relief; and
> when there are clear indicia of agency bias or taint.

*Swirsky*, 124 F.3d at 63 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)); *see also*

*Portela-Gonzalez*, 109 F.3d at 77 (describing the *McCarthy* exceptions).[6]   The Court examines

each *Swirsky-White Mountain* consideration, including three subcategories of the futility

exception – preannounced decisions, denial of access to administrative remedies, and bias or

taint – as well as the undue prejudice/irreparable harm and agency empowerment exceptions.

### 3.    *White Mountain* **Futility Exception Applied**

*White Mountain* describes a futility exception to the general rule of administrative

exhaustion.   *White Mountain*, 840 F.2d at 677.   Addressing this exception in an analogous

context, the First Circuit described it as "narrow," "stringently cabined," and available only "on

rare occasion[s]."   *Gilbert*, 932 F.2d at 61 (contemplating a similar rule to the futility exception

in exhaustion cases when a state law required an application for a permit before removing a

controlled rent unit from the housing market, and when the would-be applicants failed to apply

for the permit).   This exception is available only "where the hierarchs have made it quite plain

that the relief in question will be denied, or where a party has been denied access to

administrative remedies, or where there is objective and undisputed evidence of administrative

bias."   *Id.*   (citations and quotation marks omitted).   To squeeze within this narrow exception, the

---

[6] Plaintiffs make several arguments that do not fit squarely within the traditional exceptions to the exhaustion requirement.   Instead, these arguments are tailored to fit the circumstances of the case, and the Plaintiffs' view of fairness.   In addressing these arguments, the Court has considered the Plaintiffs' assertions in the context of First Circuit law and the First Circuit's decision in this case.

burden lies with the party seeking to bypass the administrative procedure and "any reasonable doubt ought to be resolved against that party." *Id.*

### a.        Preannounced Decision

On remand, the Plaintiffs have not claimed that "the hierarchs" have made a preannounced decision on the merits of administrative review and, therefore, this aspect of the futility exception has not been pressed. *Id.*

### b.        Denial of Access to Administrative Remedies

The Plaintiffs have also not asserted that the BIA denied them access to administrative review.  This subcategory of the futility exception is available, for example, where the administrative agency refused to hear an administrative appeal or, even worse, engaged in forgery and deliberately interfered with its own procedural safeguards.  *See Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1095-96 (1st Cir. 1989).[7]  The Plaintiffs raise no such allegation of deliberate misconduct here.

Instead, the Plaintiffs have claimed that the BIA's failure to provide the interested parties with a notice of their right to administrative appeal fits within this exception.  For authority they quote *Ezratty*:  "Exhaustion will not be required where . . . 'it was the agency not the plaintiffs that prevented administrative remedies from being exhausted.'"  *Pls.' Opp'n* at 10 (quoting *Ezratty*, 648 F.2d at 775).  They then say that this exception applies, because the BIA failed to comply with its regulations and give the interested parties notice of their right to appeal.

The Court is not convinced that the BIA's failure to give notice of the right to appeal in this situation amounts to the type of denial of access the exception contemplates.  *Ezratty*

---

[7] *Christopher W.* and *Ezratty* involved exhaustion under the Education for All Handicapped Children Act, under which the court has deemed the exhaustion requirement jurisdictional.  Nevertheless, the discussions of futility seem more broadly applicable.  If an agency has improperly refused to hear an appeal or has actively thwarted the right of appeal, it follows that an appeal to that agency would be futile.

involved a claim against the Puerto Rico Department of Education, alleging a violation of the Education for All Handicapped Children Act. *Ezratty*, 648 F.2d at 772. A student and her mother initiated suit and shortly thereafter requested agency review. The agency refused the Plaintiffs' request for departmental action on the improper ground that the parents' lawsuit barred further agency proceedings. Similar to the instant case, the agency changed its position on appeal and "now suggests in [its] brief on appeal that the agency is willing to proceed with the . . . case." *Id.* at 775. In *Ezratty*, the First Circuit said that "[n]ormally, in such circumstances, we would refuse to return the case to the agency," because "[t]o send the case back would seem unfair to the plaintiffs and might seem to condone the agency's violations of the law's procedural requirements." *Id.* However, for reasons not present here, the Court remanded the case to the agency. *Id.* at 775-78. Both *Ezratty* and *Christopher W.* addressed situations of agency commission, where the agency actively sought to bar access to administrative review, not omission, where the agency failed to inform the parties of their right to agency review.

The Plaintiffs, however, buttress their claim by asserting that the BIA failed to comply with its own regulations. *Pls.' Opp'n* at 12. The first regulation cited by the Plaintiffs reads:

> (a) The official making a decision shall give all interested parties known to the decisionmaker written notice of the decision by personal delivery or mail.
> (b) Failure to give such notice shall not affect the validity of the decision or action but the time to file a notice of appeal regarding such a decision shall not begin to run until notice has been given in accordance with paragraph (c) of this section.
> (c) All written decisions, except decisions which are final for the Department pursuant to § 2.6(c), shall include a statement that the decision may be appealed pursuant to this part, identify the official to whom it may be appealed and indicate the appeal procedures, including the 30-day time limit for filing a notice of appeal.

25 C.F.R. § 2.7. Plaintiffs state that "BIA has violated its own regulation by failing to provide Plaintiffs with any written notice of the Lease approval, much less a notice containing the

information specified in the regulations."[8]   *Pls.' Opp'n* at 12.   The BIA responds that "[t]he Department's regulations expressly provide" for situations in which notice is not provided. *Defs.' Reply* at 4.   Citing subsection (b), the Defendants continue, "Plaintiffs' notice of appeal to the IBIA would be timely and considerations such as agency expertise, accuracy and judicial economy indicate that such an appeal is appropriate."   *Id.* (quotation marks omitted).

The application of this regulation to these facts is confounding.   The BIA initially took the position that its approval of the ground lease was contingent only.   The BIA regulations broadly allow an appeal "of an action or inaction of an official of the [BIA] that is claimed to adversely affect the interested party making the request."[9]   25 C.F.R. § 2.2.   The regulation further defines "interested party" in the broadest possible terms:   "any person whose interests could be adversely affected by a decision."   *Id.*   Under these definitions it seems that even the BIA's contingent approval of the ground lease would trigger the BIA's obligation to give notice of the right to appeal.[10]   During oral argument, the BIA conceded that if the Plaintiffs had elected to appeal the contingent approval, they could have done so, and under its regulations, the BIA should have given them notice of their right to appeal.

The question then is what is the effect the BIA's failure to give notice of the right to appeal.   The quick answer is found in § 2.7(b), which provides that the failure to give notice of

---

[8] It is highly questionable whether the BIA violated this regulation by failing to provide a notice of the right to appeal to the Plaintiffs.   The regulation anticipates that the BIA might fail to give notice; it provides that the appeal period does not begin to run until notice is given.

[9] Part of the confusion is that, as used in the regulations, finality has different meanings in administrative and judicial contexts.   The regulations provide that until a decision is made by the Assistant Secretary - - Indian Affairs, a decision is not "final so as to constitute Departmental action subject to judicial review."   25 C.F.R. § 2.6(a), (c). For actions that are not appealed, the decision is not effective until "the time for filing a notice of appeal has expired and no notice of appeal has been filed."   *Id.* § 2.6(b).   Under the regulatory definition of finality, no agency decision is a final decision until made by the Assistant Secretary, but a decision may be made effective without the Assistant Secretary's approval if notice is given and an appeal is not made.

[10] Exactly how the BIA is supposed to know all the persons whose interests its action or inaction could affect is not an issue here, since the BIA was aware that the Plaintiffs here claimed an interest in the approval of the ground lease.

appeal "shall not affect the validity of the decision or action but the time to file a notice of appeal regarding such a decision shall not begin to run until notice has been given in accordance with paragraph (c) of this section."  25 C.F.R. § 2.7(b).  In the context of this case, the regulation provides that the time period for filing a notice of appeal of the BIA's approval of the ground lease has not yet run, a proposition the BIA conceded at oral argument.  *See Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 920-21 (9th Cir. 1999) (regarding filing of appeals under 25 C.F.R. § 2.10).

Taken literally, the language "the time to file a notice of appeal . . . shall not begin to run" could mean that the Plaintiffs cannot exercise even now the right of appeal because they have not even yet received formal notice and the time for filing an appeal has not commenced.  But, in the context of this case, such an interpretation is so impractical, it cannot stand.  The BIA is in no position to make such an argument:  it moved to dismiss the case so that the Plaintiffs can exhaust their administrative remedies.

The Plaintiffs, however, seek to parlay this odd situation – where under the regulation the time period for filing an administrative appeal has not begun to run over three years after the decision was made – into an argument about whether they should be required to exhaust administrative remedies.  The Court views this proposition as a non-sequitur.  Section 2.7 is not about exhaustion of administrative remedies; it is about the time limits within which those remedies may be sought.  Section 2.7 requires the BIA to give notice of a decision to interested parties to reinforce the need to file an appeal within thirty days.  The regulation protects the right of appeal by extending the time within which the notice of appeal must be filed, and absent notice of the decision, the appeal period is extended until the notice is filed.  Although § 2.7 can extend the time limits for filing a notice of appeal, it does not eliminate the obligation to exhaust

administrative remedies by proceeding with an appeal once notice is given.   The BIA's regulations could easily have provided that its failure to give notice of the decision in accordance with the regulation would allow the interested party to proceed directly to district court.   It says no such thing.

The Court rejects the Plaintiffs' attempt to make § 2.7 into something it is not. Far from preventing "administrative remedies from being exhausted," by failing to comply with the notice requirements of § 2.7, the BIA has extended the time period within which the Plaintiffs may exercise their right of administrative appeal.   *Ezratty*, 648 F.2d at 774.   To grant the interested party an extended time within which to file an administrative appeal does not begin to constitute the kind of agency action discussed in *Ezratty* and *Christopher W.*

Nevertheless, there is the problem of the combined impact of the appeal notice provision of § 2.7 and the stay provision of § 2.6(b).   Section 2.6(b) states that "[d]ecisions made by officials of the [BIA] shall be effective when the time for filing a notice of appeal has expired and no notice of appeal has been filed."   25 C.F.R. § 2.6(b).   The Plaintiffs note that the BIA made this lease effective and binding the date it was signed.[11]   *Pls.' Opp'n* at 13.   If the BIA had followed its own regulations, under § 2.7, it would have given notice of the right to appeal to the Plaintiffs and under § 2.6(b), the lease would not have become effective until "the time for filing a notice of appeal has expired and no notice of appeal has been filed."   25 C.F.R. § 2.6(b).   By skirting its own regulations, the Plaintiffs argue, the BIA managed to avoid triggering an administrative appeal of the lease by the dissidents and made the lease instantaneously effective.

---

[11] The Lease says that it is "made and entered into as of May__, 2005 (later signed on June 1, 2005 by the Director of the Eastern Region), which it defines as the "Effective Date."  The BIA's appellate brief stated that it considered the ground lease effective and binding the date it was signed.  *Federal Appellees' Answering Br.* at 31.

The Plaintiffs' argument on this point fits more comfortably under *Frederique-Alexandre* equitable considerations and the Court addresses those concerns later.  The Plaintiffs' contention does not, however, shoehorn easily into a *White Mountain* analysis – whether considered under denial of access to administrative remedies or under a bias or taint argument.  If § 2.6(b) stays the effective date of the lease, the regulation necessarily trumps the terms of the lease, regardless of what the lease says.  Further, merely by its approval of the lease and its position that the lease is effective immediately, the BIA has not demonstrated the type of agency bias or taint that *White Mountain* contemplates.

In sum, the Court concludes that denial of access to administrative remedies does not apply here.

### c.      Bias or Taint

The third criterion under *White Mountain-Swirsky* is whether the administrative body has been shown to be biased or tainted.  *White Mountain*, 840 F.2d at 677-78 (setting forth a requirement of "objective and undisputed evidence of administrative bias"); *Gilbert*, 932 F.2d at 61 (same); *Swirsky*, 124 F.3d at 63 (stating that this criterion is met "when there are clear indicia of agency bias or taint"); *see also McCarthy*, 503 U.S. at 148.  To the extent the Plaintiffs have raised administrative bias or taint, their contentions are subsumed under the denial of access arguments the Court has addressed.  Although the BIA's handling of this process is problematic for other reasons, the Plaintiffs failed to produce objective and undisputed evidence of administrative bias or taint.  *See Shows v. Wayne County Sch. Dist.*, No. 95-60073, 1995 WL 725765, at *2 (5th Cir. Nov. 8, 1995) ("[To] prove predetermination, the complaining party must prove that the decisionmaker has an irrevocably closed mind prior to the hearing."); *Joint Bd. of*

*Control v. United States*, 862 F.2d 195, 200 (9th Cir. 1988) (stating that "[a]dministrative review is not futile if the plaintiff's allegations of bias are purely speculative").

### 4.   Undue Prejudice/Irreparable Harm

Irreparable harm and undue prejudice are offshoots of *White Mountain*.   In this context, irreparable harm occurs most frequently when there is "an unreasonable or indefinite timeframe for administrative action," or when "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim."   *McCarthy*, 503 U.S. at 146-47; *Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir. 2000) (stating that "[i]n addition to the exception for futility, courts may also exercise discretion if exhaustion will not only waste resources but also work severe harm upon a litigant").

Plaintiffs first argue that, if remanded for exhaustion of administrative remedies, they would be prejudiced because "there is a substantial risk that an administrative appeal at this late date would be considered time-barred."   *Pls.' Opp'n* at 14.   The BIA, however, clearly stated in its court filings and repeated at oral argument that the Plaintiffs will be allowed to bring their claim before the IBIA, because, according to the BIA's regulations, Plaintiffs have not yet received notice of the final decision, and therefore the time for such an appeal has not run. *Defs.' Reply* at 4 (stating that "Plaintiffs' notice of appeal to the IBIA would be timely . . . .").[12] The Plaintiffs will not be prejudiced because, as BIA has conceded, their appeal would be timely.

---

[12] The BIA's position is consistent with its regulations and with prior case law.  The regulations state that "the time to file a notice of appeal regarding such a decision shall not begin to run until notice has been given."  25 C.F.R. § 2.7(b); *see LeCompte v. Superintendent, Cheyenne River Agency*, 38 I.B.I.A. 62, 62 (2002) (stating that if a Superintendent's decision did not include appeal instructions and if Superintendent did not provide appellant with such instructions, the Superintendant's decision "remains appealable to the Regional Director in accordance with 25 C.F.R. § 2.7(b)"); *Johnson v. Acting Minneapolis Area Dir.*, 28 I.B.I.A. 104, at *5-6 (1995) (finding an appeal timely filed where it was outside the thirty day limit but no proper notice regarding appeal was given pursuant to 25 C.F.R. § 2.7 and refusing to apply a "personal knowledge" exception to the rule); *Alan-Wilson v. Sacramento Area Dir.*, 30 I.B.I.A. 241, 253 (1997) ("Because there is no evidence in the record that Santana was ever given written

Second, Plaintiffs question whether since "[t]he Lease granted Quoddy Bay fully vested property rights . . . . [T]he time required for an administrative appeal would allow these processes to move so far along that the LNG facility would be a *fait accompli* before the legality of BIA's Lease approval is ever considered by a court." *Id.* The BIA responds that because Plaintiffs "have ample opportunity to participate in the NEPA process in relation to the LNG facility and then challenge any future decision made by FERC," this "assertion is simply inaccurate." *Defs.' Reply* at 5. It is true that requiring an agency appeal could result in drawing out the time required to resolve this conflict; however, it is also true, consistent with *Portela-Gonzalez*, that exhaustion allows the BIA to correct errors and to avoid unnecessarily interjecting the federal court into the dispute. *Portela-Gonzalez*, 109 F.3d at 79. The parties offer differing views about the future of the FERC process.[13] But, the First Circuit has directed courts to narrowly construe the exceptions to the exhaustion requirement and that "any reasonable doubt ought to be resolved against [the party seeking to bypass the administrative procedure]" and based on this record, the Court has no grounds to resolve the parties' contrasting predictions.[14] *Gilbert*, 932 F.2d at 61. Finally, as the parties have demonstrated, they each have the capacity to appeal this Court's decision to the First Circuit, and as the Court has demonstrated, it is fallible. If this Court does not require administrative exhaustion and the circuit court later concluded that

---

notice of the decision and his right to appeal from it, his time for filing an appeal from that decision never began to run.").

[13] At oral argument, the BIA represented that the FERC process is on hold and that an IBIA decision could well be rendered before a FERC decision. The Plaintiffs were not reassured, noting that there is nothing preventing FERC from reinstituting its review. The Court is not in a position to resolve this disagreement, except to note that both the Plaintiffs and the BIA may be correct – the FERC process may resume, and the IBIA may issue a decision before FERC review has been completed.

[14] The Plaintiffs' strongest contention lies in the maladroit way the BIA has handled this case to date, but this argument runs to issues of fairness and equity, which the Court addresses separately. The Plaintiffs have made no showing that undue prejudice or irreparable harm would result from an administrative review.

this Court erred, the delay from failing to require exhaustion could be much longer than the delay from requiring it.

### 5.    Agency Empowerment

In *McCarthy*, the United States Supreme Court discussed a final criterion that could fit under the *White Mountain* rubric:  "[A]n administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief."  *McCarthy*, 503 U.S. at 147; *see Swirsky*, 124 F.3d at 63.  Here, there is no assertion, nor is there a basis for one, that the BIA does not have the power to grant the relief requested by the Plaintiffs.

### F.    *Frederique-Alexandre*:  Common Law Exceptions

In *NN*, the First Circuit directed the Court to consider a second broad category of exceptions to the exhaustion requirement:  Common law exceptions.  *NN*, 503 F.3d at 33.  *NN* quoted *Frederique-Alexandre*:  "[T]he exhaustion requirement is not a jurisdictional prerequisite, but rather is subject to waiver, estoppel, and equitable tolling . . . ."  *Id.* (quoting *Frederique-Alexandre*, 478 F.3d at 440).  The Court begins its analysis with a discussion of *Frederique-Alexandre*.

### 1.    *Frederique-Alexandre*

*Frederique-Alexandre* addressed an employment discrimination claim under Title VII. 478 F.3d at 436.  The plaintiff's employer asserted that the plaintiff had failed to timely file an administrative charge with the Equal Employment Opportunity Commission within the required period from the date the alleged unlawful employment practice occurred.  *Id.* at 437.  The First Circuit agreed, finding "no recognized equitable basis for tolling the 300-day period in this case . . . ."  *Id.*  It cited two cases, *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982) and *Jones v.*

*City of Somerville*, 735 F.2d 5, 8 (1st Cir. 1984), for the proposition that equitable considerations might toll the running of a statute of limitations.

In *Zipes*, a sex discrimination case, the Supreme Court concluded that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393. *Jones* also concerned an employment discrimination claim, which addressed the plaintiff's failure to timely file an administrative complaint. *Jones*, 735 F.2d at 7. In *Jones*, the First Circuit observed that the requirement of timely filing "may be waived or tolled for equitable considerations." *Id.* at 8. At the same time, *Jones* affirmed the dismissal of the claim, since the plaintiff had failed to set forth any equitable grounds for tolling and the Court could find none. *Id.*

### 2.      Equitable Considerations – General Principles

As *Zipes* and *Jones* suggest, equitable exceptions most often appear in the context of statute of limitation defenses, and the Court looks first to those cases for guidance.

> Most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims. Thus, the law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver. Such statutes also typically permit courts to toll the limitations period in light of special equitable considerations."

*John R. Sand & Gravel Co. v. United States*, 522 U.S. ___, 128 S. Ct. 750, 753 (2008) (citations omitted). However, use of equitable considerations to toll a statute of limitations is "the exception, not the rule." *Rotella v. Wood*, 528 U.S. 549, 560 (2000). In *NN*, the First Circuit listed three possible bases for finding an equitable exception to the exhaustion requirement: waiver, estoppel or equitable tolling. The Court addresses each in turn, and then considers the equities of this case more generally.

3.      Waiver

Plaintiffs assert that "BIA has allowed Plaintiffs to expend time and resources on this litigation for more than two years before raising exhaustion as a defense.  Granting a dismissal at this late state would improperly reward BIA for its untimeliness." *Pls.' Opp'n* at 15.  Here, the BIA first asserted failure to exhaust in their answer to the second amended complaint on December 7, 2007.  *Defs.' Answer To Pls.' Second Am. Compl.* (Docket # 70).  Thus, they did not raise the issue while the case was initially before this Court; instead they waited to raise it until the case was on appeal to the First Circuit.

It is true that certain exhaustion claims may be waived.  *See, e.g.*, *Casanova*, 304 F.3d at 78 n.3 (adopting the majority rule that Prison Litigation Reform Act exhaustion is an affirmative defense); *MacDougall v. Potter*, 431 F. Supp. 2d 124, 128-29 (D. Mass. 2006) (concluding in a Title VII case that the agency waived the issue of the untimeliness of the employee's administrative exhaustion by failing to raise the issue prior to the issuance of the final agency decision).  In fact, the First Circuit held that non-jurisdictional exhaustion applied in this case, and that the Court should consider whether an exception to exhaustion applies, including waiver. *NN*, 503 F.3d at 33-34.

However, in the facts of this case, waiver does not apply.  The federal rules allow a party to file a motion to dismiss before answering the complaint.  Fed. R. Civ. P. 12(a)(4); 5B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 1346 (updated 2008) ("Service of a motion permitted by Rule 12 also may enlarge the applicable period of time for serving an answer or other responsive pleading, as is now prescribed by Rule 12(a)(4).").  Despite the two year lag, Defendants timely filed their Answer on December 7, 2007, and included the affirmative defense of failure to exhaust administrative remedies.  *Defs.' Answer To Pls.' Second*

*Am. Compl.* at 19; *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ."). Under Rule 12(h), only certain threshold defenses, such as "lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process . . . are waived if they are not included in a preliminary motion under Rule 12 as required by Rule 12(g) or, if no such motion is made, they are not included in the responsive pleading . . . ." 5C Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 1391 (updated 2008). The affirmative defense of failure to exhaust administrative remedies is not among these defenses. Thus, failure to exhaust falls within the general rule, which provides that "the failure to raise an affirmative defense by motion will not result in a waiver as long as it is interposed in the answer." 5 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 1277 (updated 2008); *see also Perry v. Sullivan*, 207 F.3d 379 (7th Cir. 2000).

In *Guzman-Rivera*, the First Circuit addressed an analogous question: When must the affirmative defense of qualified immunity be raised or waived. *Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664 (1st Cir. 1996). *Guzman-Rivera* reviewed the points at which qualified immunity might be raised: first, in a motion to dismiss; second, at summary judgment; and third, at trial. *Id.* at 667. The Court decided that "to reduce the potential for abuse by defendants, we believe that the defense of qualified immunity may be deemed waived if it is not raised in a diligent manner during the post-discovery, pre-trial phase." *Id.* According to the First Circuit, a defendant "may raise the defense of qualified immunity at summary judgment, regardless of whether it was raised prior to discovery." *Id.* (holding, however, that because the defendants in *Guzman-Rivera* waited until "very late in the pre-trial, post-discovery phase, despite the fact they

had ample opportunity to have the issue resolved expeditiously earlier in the proceedings," that

the defense was waived).  Here, the Defendants did not waive their affirmative defense.

### 4.      Equitable Estoppel

Equitable estoppel "is not employed unless the plaintiff relies on his or her adversary's

conduct and changes his or her position for the worse."  *Kelley v. NLRB*, 79 F.3d 1238, 1247-48

(1st Cir. 1996).

> The Supreme Court has explained that a party seeking to assert equitable estoppel
> must demonstrate that (1) the party to be estopped made a definite
> misrepresentation of fact to another person having reason to believe that the other
> [would] rely upon it; (2) the party seeking estoppel relied on the
> misrepresentations to its detriment; and (3) the reliance [was] reasonable in that
> the party claiming the estoppel did not know nor should it have known that its
> adversary's conduct was misleading.

*Ramirez-Carlo v. United States*, 496 F.3d 41, 49 (1st Cir. 2007) (quoting *Heckler v. Cmty.*

*Health Serv.* 467 U.S. 51 (1984)) (internal quotation marks omitted).  Because Plaintiffs would

seek to apply equitable estoppel to a governmental entity, affirmative misconduct is a

prerequisite; such conduct "require[s] an affirmative misrepresentation or affirmative

concealment of a material fact by the government, although it does not require that the

government intend to mislead a party."  *Id.* (quoting *Watkins v. United States Army*, 875 F.2d

699, 707 (9th Cir. 1989) (en banc)).

*Watkins* itself involved affirmative misrepresentations about the plaintiff's qualifications

for military reenlistment, and the Ninth Circuit determined that "the Army affirmatively acted in

violation of its own regulations when it repeatedly represented that Watkins was eligible to

reenlist, as well as when it reenlisted him time after time."  *Watkins*, 875 F.2d at 707-08.

Distinguishing another Ninth Circuit opinion, the court stated that "mere failure to inform or

assist does not justify application of equitable estoppel."  *Id.* at 708 (quoting *Lavin v. Marsh*, 644

24

F.2d 1378, 1384 (9th Cir. 1981)).  Further, "[p]ersons dealing with the government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority and provide misinformation."  *Mukherjee v. INS*, 793 F.2d 1006, 1009 (9th Cir. 1986).   Because there is no affirmative misconduct in this case, the Court need not reach the other elements of equitable estoppel.

It is true that BIA officials failed to notify the Plaintiffs of their decision and of the available administrative remedy, but the BIA's passive behavior does not amount to "affirmative misconduct."  *See Sturla v. Dir., FEMA*, 1997 U.S. Dist. LEXIS 14463, at *11-12 (N.D. Cal. Apr. 24, 1997) ("Although defendants failed to inform the Sturlas of the need to file a proof of loss, they did not affirmatively misrepresent that the Sturlas did not need to do so.").  The BIA's inaction does not meet the stringent standards for applying equitable estoppel to a governmental entity, especially since its inaction extends the time period for the Plaintiffs to administratively challenge its decision.  *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir. 1985) (highlighting the interests protected by narrowly construing equitable estoppel against the government).

### 5.     Equitable Tolling

"Equitable tolling applies when the plaintiff is unaware of the facts underlying his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's conduct or statements in failing to bring suit."  *Ramirez-Carlo*, 496 F.3d at 48 (citing *González v. United States,* 284 F.3d 281, 291 (1st Cir. 2002) and *Vistamar, Inc. v. Fagundo-Fagundo,* 430 F.3d 66, 73 (1st Cir.2005)).

> Courts weigh five factors in assessing claims of equitable tolling: (1) the lack of actual notice of the filing requirement; (2) the lack of constructive notice of the filing requirement; (3) the diligence in pursuing one's rights; (4) the absence of

prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the filing requirement."

*Benitez-Pons v. Puerto Rico*, 136 F.3d 54, 61 (1st Cir. 1998).

This is not a typical circumstance under which equitable tolling should be applied; more commonly, equitable tolling is considered when a statute of limitations has run and the plaintiff asserts that such running should be suspended. *Gonzalez*, 284 F.3d at 291. For example, tolling is "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." *Salois v. Dime Sav. Bank, FSB*, 128 F.3d 20, 25 (1st Cir. 1997). Here, the BIA makes no assertion that a filing deadline has been missed.

Even if equitable tolling applied, the federal standard requires that "plaintiffs exercised due diligence in attempting to uncover the factual basis underlying" the claim. *Id.* at 25-26. Here, the Plaintiffs are represented by able attorneys who are affiliated with a law school. At some point, no later than November 2, 2005, when they filed the Complaint, the Plaintiffs possessed actual knowledge of the lease approval decision and knew enough about the law to initiate a sophisticated multi-count cause of action in this Court. In these circumstances, it is difficult to assume they were wholly unaware of administrative exhaustion requirements.

Even assuming they did not have actual knowledge of this requirement, the question is whether they had constructive knowledge. According to First Circuit precedent, they did. "The general rule is that 'those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.'" *Kelley*, 79 F.3d at 1249 (quoting *Heckler*, 467 U.S. 51, 63 (1984)); *see also Benitez-Pons*, 136 F.3d at 62-63. "Courts generally impute constructive knowledge of filing and service requirements to plaintiffs who, like [Plaintiffs], consult with an attorney." *Kelley*, 79 F.3d at 1249. Even if equitable tolling

were applicable, the Plaintiffs had constructive knowledge as early as the fall of 2005 of the

BIA's regulations and the exhaustion requirement.

### 6.        General Equitable Considerations

### a.        The BIA, its Regulations, and its Noncompliance

The Plaintiffs' most compelling claim is that the way the BIA has handled this entire case

makes it simply unfair to remand it back to the agency.  This point, though compelling, does not

fit cleanly into any of the subcategories in *White Mountain* or *Frederique-Alexandre*;

nevertheless, the Court will address what is most troubling about the BIA's motion.

To begin, the BIA promulgated § 2.7 to make certain that persons affected by its

decisionmaking are aware of the decision and can act to protect their interests.  The need for §

2.7-style notice is present in an administrative context because an administrative agency would

not necessarily in the ordinary course notify an interested party not directly involved in the

decision.  This situation is an example.  On June 1, 2005, the BIA approved the ground lease,

and the parties to the lease, the Tribe and Quoddy Bay, were aware of the approval.   Absent §

2.7 notice, however, the BIA would not have been required to give notice of its action to other

interested parties, like the Plaintiffs, and the BIA could make the decision, the appeal period

could lapse, and the consequences of the decision could be put into effect, and all the while, the

interested persons would remain in the dark until too late.

Section 2.7 acts with § 2.6 to make certain that an agency decision does not become

effective until the time for administrative appeal is over and no notice of appeal has been filed.

If the interested parties have been given notice of their right to appeal under § 2.7 and fail to

appeal, the decision becomes effective.  25 C.F.R. § 2.6(b).  If, after notice, the interested parties

appeal, the decision becomes effective only if "the official to whom the appeal is made

determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately." 25 C.F.R. § 2.6(a). This regulatory process – notice, automatic delay upon appeal, and a public interest determination – is designed to avoid presenting the objecting parties with a *fait accompli*. Consequently, "a BIA official may not make his/her own decision effective immediately. Only the BIA official at the next appeal level, or the Board in the case of an Area Director's decision, may do so." *Stuart v. Acting Billings Area Dir.*, 25 I.B.I.A. 282, 290 (1994).

Here, the BIA simply ignored its own regulations. When the BIA approved the ground lease between the Tribe and Quoddy Bay on June 1, 2005, it was aware that dissident tribal members objected to the lease and were determined to prevent the construction of the LNG terminal, but the BIA failed to notify the dissident members of their right to administratively appeal the lease approval.[15] The regulations provide for this eventuality and effectively extend the time within which an appeal can be brought until notice is given. 25 C.F.R. § 2.7(b). Thus, as the BIA conceded, the appeal period for the Plaintiffs in this case is still running over three years after the lease approval.

If this were all the BIA failed to do, it would be self-sanctioning – extending the time period within which the interested parties can exercise their appellate rights. But, here, it seems that the BIA compounded its error by making its approval of the ground lease effective immediately, thereby circumventing the stay provisions of its regulations. At least, this is what

---

[15] In this case, the BIA had multiple contacts with some Plaintiffs, and was made aware of their interest in the BIA's determination. First, Plaintiff Hilda Lewis and Mr. Robert Impson had a phone conversation on the day the decision issued regarding the lease. Second, an attorney for the Plaintiffs, unaware that the lease had been approved, sent a letter to the BIA on July 6 explaining her clients' objections to the lease. *Letter from L. Williams to R. Empson* [sic] (Docket # 80-7). Third, Ms. Lewis wrote Mr. Impson a letter dated ten days after the approval documenting concerns about the lease. *Second Am. Compl. for Declaratory and Injunctive Relief* ¶¶ 12, 99 (Docket # 39) (*Compl*). Mr. Keel responded to Ms. Lewis' letter on Mr. Impson's behalf without any reference to the lease approval or appeal rights.

the BIA represented to the Court of Appeals for the First Circuit: "NN places undue reliance upon the fact that the lease became effective and binding on the date it was signed." *Federal Appellees' Answering Br.* at 31. By failing to give the Plaintiffs notice as required by § 2.7 and failing to stay the effective date of its approval as required by § 2.6, the BIA did precisely what its regulations were promulgated to avoid – making critical agency decisions, failing to notify the interested parties, and allowing the consequences of the decision to become immediately effective without measuring the public interest.

The BIA has not offered a reason it failed to comply with its own regulations. A facially plausible basis would have been that the approval was contingent and the BIA's failure to notify the parties would seem consistent with its initial position in this case. But, the BIA has since not only disavowed its initial position, it has since admitted that even a contingent approval would have required administrative exhaustion. The upshot is that the BIA's actions are inexplicable.

The Court has no basis to know whether the BIA's mishandling of this case is symptomatic of a broader agency practice. The irony is that if the BIA routinely fails to give notice of appellate rights, fails to stay the project, and fails to make a public interest determination, no one – except the BIA, the directly affected parties, and unusually canny opponents – will know that the BIA has violated its regulations and that opponents had a right to administrative review. The Court must deal only with the case before it and the best it can do on this broader question is to document and highlight its concern, and if this agency practice reappears in other cases, courts can take appropriate action.

**b.    The BIA's Volte Face**

An additional factor is the BIA's dramatic change of position on appeal regarding whether its approval of the ground lease was contingent or final. Having argued to this Court

that the lease approval was contingent, on appeal, the BIA fundamentally changed its position "regarding the finality of its lease approval" and its change of position formed a "large part" of the reason the First Circuit reversed the dismissal of the law suit.  *NN*, 503 F.3d at 23.  On appeal, for the first time, the BIA admitted that its approval of the lease was not contingent, but final.

The primary consequence of the BIA's inconsistency on this central fact has been inordinate delay and wasted time and expense.  If the BIA's position at the outset had been the same as its current position, the question of exhaustion of administrative remedies would likely have been raised and resolved early on.  Now, instead of addressing this threshold issue at the threshold, the BIA is asking the Court to do so nearly three years into the case.  Further, if exhaustion had been raised at the outset and the case returned to the agency, there is an excellent chance that by now the IBIA process would be complete.  The IBIA decision might have fully satisfied the parties and, if not, the parties would likely be before this Court on a narrower range of contested issues.  The BIA's motion to dismiss in effect requires the Plaintiffs and the Court to go back to square one and begin all over again.  In these circumstances, the Court could well determine that the fairer approach is to deny the motion and refuse to allow the BIA to benefit from its inconsistency.

### c.    The Plaintiffs and Actual Harm

If the Plaintiffs had been lulled into inaction by the BIA, the equities would weigh substantially in their favor.  However, here, the Court's concerns are substantially mitigated, largely because the Plaintiffs are represented by a law school clinic, including a law professor,

and they were smart enough to protect their interests and to come to court.[16]  Further, there is no suggestion in this case that the BIA's approval precipitated any irreversible action on the project. Thus far, the actual impact of the BIA's failures in this case is more theoretical than real.

Sometimes the passage of time and the march of events justify a refusal to dismiss a claim for failure to exhaust, such as when the plaintiffs can demonstrate that "unreasonable or indefinite delay threatens unduly to prejudice the subsequent bringing of a judicial action" or "irreparable harm if unable to secure immediate judicial consideration" of their claims.  *Portela-Gonzalez*, 109 F.3d at 77.  But, the Court finds unconvincing the Plaintiffs' claims of actual harm.  They have pointed to no actions by the Tribe, by Quoddy Bay, or by federal agencies since the filing of the case that now place the case in a different practical posture than it was in the day it was filed.

### d.     The Clinching Argument

A final consideration carries the day.  This is not a function of the BIA or of its questionable handling of this case, but rather a cold-eyed assessment of the benefits and risks to the parties of retaining the case without exhausting administrative remedies.  In their response, the Plaintiffs urge the Court to conclude that their statutory causes of action raise issues of law only and this Court owes no deference on issues of law to the agency.  *Pls.' Opp'n* at 15-17.

Even if true for some causes of action, it is not true for the Leasing Act claim.  *See Second Am. Compl.* at ¶¶ 35-46.  The Plaintiffs attacked the BIA's lease approval on the ground that the agency failed to comply with the Leasing Act, asserting that the BIA failed to obtain a

---

[16] The Court recognizes that this is something of a Catch-22.  If the interested parties are not informed and remain silent, they may have suffered harm, but the harm remains unknown; if the plaintiffs, such as those in this case, are not informed by the BIA, but inform themselves and appeal to the BIA, they mitigate their own harm.  There is, however, a third alternative – that the Plaintiffs are lulled into late action and can demonstrate harm from the BIA's failure to comply with its regulations.

fair market value appraisal "to ensure that the negotiated rent amount is at least equal to the fair market value of the leased land." *Id.* at ¶ 43. Further, the Plaintiffs previously argued that the BIA violated the Leasing Act when it "willfully ignored flaws in the tribal lease approval process, which was marked by attorney conflicts, secret negotiations, withholding of the lease documents, and a flawed referendum." *Pls.' Opp'n to Mot. to Dismiss* at 22 (Docket # 19). They claim the BIA's actions violate its trust obligations, the BIA Appraisal Handbook, the Trust Management Plan of the Department of the Interior, and a host of BIA regulations. *Second Am. Compl.* at ¶¶ 35-46. On appeal, the First Circuit agreed with the Plaintiffs' argument that, even if their Trust Obligation claim was not separately sustainable, the Leasing Act "derives from the general trust obligation assumed by the federal government toward the Indian people." *NN*, 503 F.3d at 32. Whether by approving the lease the BIA acted in accordance with its own regulations, with its general trust obligation, with its administrative directives, and in a manner consistent with its handling of similar cases involving other Tribes are issues that fall within the ambit of agency expertise. These Leasing Act issues are ideally suited for administrative review before judicial review.

Bifurcating the causes of action, sending some back to the agency and retaining others, is one option. Here, the Leasing Act claim could be sent back to the agency for resolution and the Court would retain the NEPA, NHPA, and ESA counts. If the separate causes of action raised purely independent legal issues, such as a constitutional challenge collateral to the substantive issues of the administrative proceeding, the argument to split the causes of action and afford immediate judicial review would be more compelling. *See Blackbear v. Norton*, 93 Fed. Appx. 192, 194 (10th Cir. 2004). However, here, whether the BIA's approval of the ground lease complied with the Leasing Act could well resolve the remaining causes of action. If the IBIA

32

determines that the BIA violated the Act in approving the lease, the NEPA, NHPA, and ESA causes of action will be rendered moot unless and until the BIA conforms with the Leasing Act requirements and this Court would have retained the case only to issue an advisory ruling.

Further, the Court's refusal to review BIA decisions where the plaintiffs failed to exhaust administrative remedies is consistent with prior case law. *Blackbear*, 93 Fed. Appx. at 193 ("Neither those plaintiffs whose appeal to the IBIA is pending nor those who chose not to appeal can point to a final agency action upon which to base their [APA] claim."); *Klaudt v. United States Dep't of Interior*, 990 F.2d 409, 411-12 (8th Cir. 1993); *Joint Bd.*, 862 F.2d at 199-200; *Runs After v. United States*, 766 F.2d 347, 352 (8th Cir. 1985); *Crow Creek Sioux Tribe v. Bureau of Indian Affairs*, 463 F. Supp. 2d 964, 968-71 (S.D. 2006). It is consistent with BIA regulation. 25 C.F.R. § 2.3(b). It is consistent with the BIA's special expertise:

> [T]he BIA has special expertise and extensive experience in dealing with Indian affairs. The interest of the BIA and its parent Department of Interior in administrative autonomy also supports requiring exhaustion of administrative remedies. Moreover, . . . the somewhat anomalous and complex relationship between the quasi-sovereign Indian tribes and the federal government also supports, in general, requiring appellants to initially seek an administrative solution through the BIA and the Department of Interior.

*Runs After*, 766 F.2d at 352.

Finally, in the event the IBIA does not resolve the case and it returns to this Court, the administrative review will allow the BIA the opportunity to correct its own errors, will afford the parties and the court the benefit of agency expertise, and will make a complete record for this Court to review. *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 1998); *Joint Bd.*, 862 F.2d at 200.

In sum, the balance of the equities favors dismissal without prejudice to allow the Plaintiffs to exhaust their administrative remedies. In view of the BIA's unskillful handling of

this case, the Court's decision represents the triumph of hope over experience and the Court fully expects the BIA to proceed in a manner consistent with its special expertise and solemn charge.

## IV.     CONCLUSION

The Court GRANTS the Bureau of Indian Affairs' Renewed Motion to Dismiss without prejudice (Docket # 78).[17]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2008

---

[17] Because the Court grants the BIA's motion to dismiss, the Court dismisses as moot the Plaintiffs' Motion for Submission of Extra-Record Evidence and Designation of Expert Witness (Docket # 88).